# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

KELTI SUE ALDRICH,
                Plaintiff,

        v.

ANDREW SAUL, Commissioner of the
Social Security Administration,
                Defendant.

CAUSE NO.: 4:17-CV-69-TLS-JEM

## OPINION AND ORDER

Plaintiff Kelti Sue Aldrich seeks review of the final decision of the Commissioner of the
Social Security Administration denying her application for disability insurance benefits. For the
reasons set forth below, the Court finds that the ALJ's decision is supported by substantial
evidence and Plaintiff has not identified a basis for remand.

## PROCEDURAL BACKGROUND

On July 3, 2013, Plaintiff filed an application for disability insurance benefits. AR 145,
ECF No. 12. In her application, Plaintiff alleged disability beginning October 20, 2011. *Id*. 143,
145. The claim was denied initially and on reconsideration. *Id*. 75, 83. Plaintiff requested a
hearing, which was held before the Administrative Law Judge (ALJ) on January 19, 2016. *Id*. 14,
90, 111. On August 2, 2016, the ALJ issued a written decision, finding Plaintiff not disabled. *Id*.
14–26. On August 16, 2017, Plaintiff her Complaint [ECF No. 1] in this Court, seeking reversal
of the Commissioner's final decision and remand for further proceedings. Plaintiff filed an
opening brief [ECF No. 19], the Commissioner filed a response brief [ECF No. 24], and Plaintiff
filed a reply brief [ECF No. 26].

# THE ALJ'S DECISION

For purposes of disability insurance benefits, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 20, 2011, the alleged onset date. AR 16.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). In this case, the ALJ determined that Plaintiff has the severe impairments of status post replacement of bilateral hips, status post shoulder impingement with surgery, obesity, fibromyalgia, and rheumatoid arthritis. AR 16.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." *Id.* § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id.* § 404.1520(a)(4)(iii), (d). Here, the

ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listings 1.02, 1.03, 1.04, 1.06, and 14.09. AR 17.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry twenty pounds occasionally and ten pounds frequently; she can stand and walk four hours total in an eight-hour workday; she can sit six hours total in an eight-hour workday; she can occasionally climb ramps and stairs, balance, and stoop; she can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl; she must avoid even moderate exposure to wetness; and, she must avoid all exposure to hazards.

AR 17–18.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that Plaintiff is unable to perform any past relevant work under 20 C.F.R. § 404.1565. AR 23.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that Plaintiff is not disabled because Plaintiff can perform significant jobs in the national economy of cafeteria cashier, garment sorter,

and bench assembler. AR 24–25. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–3, 7. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, Plaintiff argues that the ALJ erred at step three by finding that she does not meet a listing and that the ALJ improperly considered the evidence in finding that Plaintiff has an RFC for a limited range of light work. The Court considers each argument in turn.

### A.    Listing of Impairments

The Listing of Impairments "describes for each of the major body systems impairments that [the agency considers] to be severe enough to prevent an individual from doing any gainful

activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals a listed impairment and meets the 12-month duration requirement, the adjudicator will find the claimant disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d); *see also* 20 C.F.R. § 404.1505(a). A claimant "must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

In this case, the ALJ considered Listings 1.02, 1.03, 1.04, 1.06, and 14.09 and found that the record does not contain clinical findings or test results that meet the level of severity required by any of the musculoskeletal system or immune system disorder listings. AR 17. The ALJ indicated that his analysis of the record was set out in the residual functional capacity assessment section of the decision. *Id*. The ALJ also noted that no medical expert had mentioned findings that would medically equal the criteria for any of the listings. *Id*. In her brief, Plaintiff argues that she meets all of these listings. Although Plaintiff recites the text of each listing and then sets out some facts after each, she offers no analysis of the requirements of each listing nor does she attempt to show how the medical evidence supports each element of each listing. The Court finds that Plaintiff has not met her burden and that substantial evidence supports that ALJ's step three finding as set forth below.

1.    *Listing 1.02*

Listing 1.02 provides:

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), *resulting in inability to ambulate effectively*, as defined in 1.00B2b;

or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), *resulting in inability to perform fine and gross movements effectively*, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02 (2016) (emphasis added). The "inability to ambulate effectively" is defined, in relevant part, as

an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*Id*. § 1.00B2b(1).

[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id*. § 1.00B2b(2). Plaintiff does not include this regulatory definition of "inability to ambulate effectively" in her brief.

To show that she meets Listing 1.02, Plaintiff identifies the following evidence regarding her hip replacement and arthritis. In February 2013, Plaintiff's medical records show prominent osteoarthritis involving the left hip based on a pelvic x-ray. AR 214. X-rays from August 7, 2013, "reveal end-state arthritis with avascular necrosis of both hips, right greater than left," and, in September 2017, Dr. Daluga noted the x-ray results and also noted "collapse of both hips." *Id*. 503, 530. Plaintiff was diagnosed with avascular necrosis and had surgery in August 2013 to

replace her right hip and surgery in October 2013 to replace her left hip. *Id*. 36–38, 202, 497, 498, 520. Plaintiff's preoperative diagnosis was degenerative arthritis. *Id*. 531. Due to a fracture discovered during surgery, Plaintiff has wires attached around her left femur, which causes continued pain and which she contends prevents her from ambulating effectively. *Id*. 37–39; 531.

However, Plaintiff has not identified evidence of an inability to ambulate effectively as defined in the regulations. When the ALJ evaluated Plaintiff's RFC, he explained, "[Plaintiff] alleged that she occasionally needs a cane for ambulation. Although [Plaintiff] was noted to use a cane to ambulate shortly after her hip replacements, [Plaintiff] reported in August 2014 that she had no hip pain since her hip replacement and she had a stable gait, and in January 2015, [Plaintiff] was noted to ambulate independently." *Id*. 19 (citing 595–97, 786, 883–907). More specifically, the January 28, 2015 medical record provides that Plaintiff "ambulated into clinic independently, no [assistive device]." *Id.* 786. The ALJ also noted that, on numerous occasions, Plaintiff engaged in activities that would suggest greater functioning that she alleged, such as walking across campus, carrying laundry, shoveling snow, and loading groceries into a car. *Id.* (citing 387, 750, 807). This constitutes substantial evidence in support of the ALJ's step three finding that Plaintiff's impairments do not meet Listing 1.02.

In the next section of her brief addressing Listing 1.03, Plaintiff asserts that, even though she has had some improvement to her hips, "she still cannot effectively ambulate as stated in her testimony and the residual function[al] capacity medical source statement." Pl.'s Br. 12 (citing AR 38–39, 64–68). Neither piece of evidence demonstrates an inability to ambulate effectively as defined by the regulations. First, her hearing testimony that hip pain makes walking difficult and that she had experienced difficulty walking since 2003 are general statements that do not

address the specific requirements of the listings. *See* AR 38–39. Second, the ALJ properly gave little weight to the medical source statement of Plaintiff's treating nurse practitioner Ms. Strasburger, *see id.* 584–88, as addressed more thoroughly in Part B of this Opinion below. The ALJ found Ms. Strasburger's February 2014 opinion inconsistent with the evidence of record and her own examination findings. *Id.* 23. As related to Plaintiff's ability to ambulate, the ALJ noted that, "just three months after Ms. Strasburger rendered her opinion, Dr. Daluga noted that [Plaintiff] was 'doing well with her hips' and five months after Ms. Strasburger's opinion, Dr. Daluga recommended [Plaintiff] be released to '[f]ull activity with no limitations.'" *Id.* (citing AR 644).

Likewise, Plaintiff has failed to show an inability to perform fine or gross movements effectively, much less how she meets the other requirements of Listing 1.02B. Under the regulations, the inability to perform fine and gross movements effectively

> means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2c (2016). Examples "include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." *Id*. Plaintiff has made no effort to identify any evidence of an inability to perform such functions. In contrast, in assessing Plaintiff's RFC, the ALJ noted that, in June 2012, Plaintiff reported that she had been busy cleaning her daughter's room; in July 2012, Plaintiff reported that she could prepare meals, clean up afterwards, and go shopping; in

October 2014, Plaintiff reported that she was carrying laundry; and in April 2015, Plaintiff had shoveled snow and loaded groceries into her car. *Id.* 20 (citing AR 240, 246, 750, 807).

Based on the foregoing, Plaintiff has not met her burden of showing that she meets or equals Listing 1.02.

*2. Listing 1.03*

Listing 1.03 provides: "1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with *inability to ambulate effectively*, as defined in 1.00B2b, and *return to effective ambulation did not occur*, or is not expected to occur, within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.03 (2016) (emphasis added). For the same reasons set forth in the discussion of Listing 1.02, substantial evidence cited by the ALJ demonstrates that Plaintiff does not meet Listing 1.03's requirement of an inability to ambulate effectively after surgery. Plaintiff has not met her burden of showing that she meets or equals Listing 1.03.

*3. Listing 1.04*

Listing 1.04 provides:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), *resulting in compromise of a nerve root (including the cauda equina) or the spinal cord*. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by

severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04 (2016) (emphasis added).

Listing 1.04 requires a showing that the impairment results in compromise of a nerve root or of the spinal cord, and Plaintiff has offered no such evidence. In formulating Plaintiff's RFC, the ALJ discussed the objective evidence related to Plaintiff's back impairment:

A February 2013 lumbar spine MRI showed moderate facet hypertrophy from L3 to the sacrum *without* significant associated disc pathology or neuroforaminal compromise. Dr. Loyd noted that [Plaintiff's] lumbar spine was unremarkable and the lumbar injection was not helpful, so he ordered x-rays and wanted [Plaintiff] to attend physical therapy. [Plaintiff's] x-ray of the lumbar spine showed mild anterolisthesis at L4-L5 with flexion and extension, and multilevel degenerative changes and facet arthropathy.

AR 21 (emphasis added). The ALJ also noted that Plaintiff was discharged from physical therapy in early April 2013 because she did not feel it was helpful and wanted to pursue surgical intervention. *Id.* (citing AR 203, 380–82). The ALJ then noted that, in June 2013, new x-ray findings prompted Plaintiff to undergo the bilateral hip replacement surgeries discussed above. *Id.* (citing AR 282–83). And, the ALJ noted that, by early December 2013, Plaintiff had good motion and stability and was ready to advance to full weight bearing and work on her gait and balance. *Id.* (citing AR 655). This substantial evidence discussed by the ALJ supports the finding that Plaintiff does not meet or equal Listing 1.04.

In support of Listing 1.04, Plaintiff identifies record evidence demonstrating her chronic back pain but offers no evidence to support the specific listing requirements. Pl.'s Br. 12–13 (citing AR 208–28, 952–53, 955, 960). Although this evidence goes to Plaintiff's RFC and her ability to perform work-related activities, it does not demonstrate that she meets Listing 1.04.

*4.    Listing 1.06*

Listing 1.06 provides:

1.06 Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With:

A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;

and

B. *Inability to ambulate effectively*, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.06 (2016) (emphasis added).

In support of this listing, Plaintiff notes that, during the left hip replacement surgery, Dr. Daluga noticed a crack in her femur. AR 531. Dr. Daluga obtained an x-ray, which revealed a crack that propagated down the entire proximal third of Plaintiff's left femur. *Id*. Dr. Daluga placed multiple cerclage wires around the femur to maintain the anatomical alignment, which remain in place today. *Id.* 39, 541. However, Listing 1.06 requires an inability to ambulate effectively. As discussed above in relation to Listing 1.02, the substantial evidence of record cited by the ALJ shows that Plaintiff's impairments did not result in an inability to ambulate effectively. Thus, Plaintiff has not shown that her impairments meet or equal Listing 1.06.

*5.    Listing 14.09*

Listing 14.09 provides:

14.09 Inflammatory arthritis. As described in 14.00D6. With:

A. Persistent inflammation or persistent deformity of:
1. One or more major peripheral weight-bearing joints *resulting in the inability to ambulate effectively* (as defined in 14.00C6); or
2. One or more major peripheral joints in each upper extremity *resulting in the inability to perform fine and gross movements effectively* (as defined in 14.00C7).

or

B. Inflammation or deformity in one or more major peripheral joints with:
1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

C. Ankylosing spondylitis or other spondyloarthropathies, with:
1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or
2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

or

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
1. Limitation of activities of daily living.
2. Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09 (2016) (emphasis added).

In her brief, Plaintiff addresses Listings 1.02 and 14.09 in tandem, offering one paragraph

of evidence for both listings that summarizes her hip replacement surgery and the diagnosis of

degenerative arthritis of the left hip with prominent osteoarthritis. Pl.'s Br. 11. Although Plaintiff

sets out the text of Listing 14.09, she offers no analysis of how she meets any aspect of this

multi-part listing. Because the evidence she cites relates to her hips, it appears that she may be

attempting to meet Listing 14.09A. As discussed in the context of Listing 1.02, Plaintiff has not

offered evidence to demonstrate an inability to ambulate effectively or an inability to perform

fine and gross movements effectively; thus, she has not shown that she meets Listing 14.09A.

Moreover, Plaintiff has not attempted to show that she satisfies the requirements of subparts B–D

of the listing. As the Commissioner notes in the response brief, the ALJ considered Plaintiff's

arthritis in detail in the RFC analysis and concluded that, despite her impairments, Plaintiff could

perform a reduced range of light work. Plaintiff has not met her burden of demonstrating that her

impairments meet or equal Listing 14.09.

**B.      Residual Functional Capacity**

The Residual Functional Capacity ("RFC") is a measure of what an individual can do

despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R.

§ 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical

one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d

802, 808 (7th Cir. 2014). "RFC is an assessment of an individual's ability to do sustained work-

related physical and mental activities in a work setting on a regular and continuing basis. A

'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work

schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment is a

function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

The relevant evidence includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The ALJ must "also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Here, Plaintiff argues that the ALJ erred in determining her RFC by improperly considering her subjective complaints and by disregarding the opinion of her treating nurse practitioner. As an initial matter, the Court notes that Plaintiff misstates the ALJ's RFC assessment as finding that she can perform "light work." Pl.'s Br. 14. Rather, the ALJ found that Plaintiff has the RFC for a *reduced* range of light work. AR 17–18. For the reasons set forth below, the Court finds that Plaintiff has not shown reversible error in the ALJ's RFC determination.

1.    *Plaintiff's Subjective Complaints*

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to

work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).[1]

Subjective allegations of disabling symptoms alone cannot support a finding of disability. SSR

16-3p, 2017 WL 5180304, at *2. The ALJ must weigh the claimant's subjective complaints, the

relevant objective medical evidence, and any other evidence of the following factors:

    (1)     The individual's daily activities;
    (2)     Location, duration, frequency, and intensity of pain or other symptoms;
    (3)     Precipitating and aggravating factors;
    (4)     Type, dosage, effectiveness, and side effects of any medication;
    (5)     Treatment, other than medication, for relief of pain or other symptoms;
    (6)     Other measures taken to relieve pain or other symptoms;
    (7)     Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). In this case, the ALJ followed the correct steps, considering the

factors set forth in 20 C.F.R. § 404.1529(c)(3) and discussing in detail Plaintiff's hearing

testimony, Plaintiff's medical treatment notes, the treatment that Plaintiff chose to pursue, and

the objective medical evidence, with the discussion of the medical evidence spanning three and a

half single-spaced pages. *See* AR 18–23.

      In her brief, Plaintiff first argues that the ALJ erred by stating: "[P]laintiff testified that

injections have not helped her pain, yet the record shows that [Plaintiff] has reported on

numerous occasions that injections have helped pain." *Id.* 19. Plaintiff reasons that the ALJ

failed to realize that Plaintiff had injections for more than one ailment and that some injections

have helped with regard to her hip pain but that those for back pain did not help. Pl.'s Br. 17.

Plaintiff notes that the ALJ cited a January 2013 record notation that the injections helped her

hip, not her back, and that her lumbar spondylosis improved with lumbar radiofrequency

---

[1]  Social Security Ruling 16-3p, revised on October 25, 2017, was initially effective as of March 28, 2016, and governs the ALJ's August 2, 2016 decision in this case. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016).

rhizotomy (not injections). *See* AR 19 (citing AR 220). Plaintiffs identifies other places in the record where injections to her lumbar area were again noted as not helpful. *Id.* 214, 960.

Plaintiff's argument is not well taken. When directly asked by the ALJ at the hearing if any of her past injections for pain "really helped," Plaintiff testified, "No." *Id.* 40. In addition, the ALJ explicitly recognized throughout the RFC determination that Plaintiff received various types of injections, some of which were helpful and some of which were not. For example, the ALJ noted that in May 2012, Plaintiff received a therapeutic left hip injection, *id.* 19 (citing AR 293); in December 2012, she received a lumbar epidural and right hip injection, *id.* 20 (citing AR 224–25); in January 2013, she received right sacroiliac joint and left hip injections, *id.* (citing AR 216–19); in January 2014, she received a left shoulder injection, *id.* 21 (citing AR 651); in February 2014, she received an injection for inflammatory arthritis in her hands, *id.* (citing AR 604); in April 2014, she received an injection in her left shoulder, *id.* (citing AR 651); and in December 2015, she requested a repeat sacroiliac joint injection, *id.* 22 (citing AR 950).

Next, Plaintiff criticizes the ALJ's description of an August 2014 report as providing that "she had no hip pain since her hip replacements and that she had a stable gait." *Id.* 19 (citing AR 595–97). Plaintiff contends that that she made no such statement regarding "hip" pain in the record cited by the ALJ. Plaintiff is correct that the August 20, 2014, the record provides that she had presented "with lower back pain. She has both her hips replaced 2013. She no longer has *leg* pain. The back pain occurs when standing/walking." *Id.* 595 (emphasis added). However, it is unclear how this misstatement by the ALJ affects his otherwise accurate recitation and thorough evaluation of the medical evidence. Notably, the same treatment note reflects that Plaintiff had a stable gait, as indicated by the ALJ. *Id*. 596.

Next, Plaintiff notes the ALJ's reliance on the fact that Plaintiff tripped over a jewelry box while carrying laundry. *Id.* 19 (citing AR 807). Plaintiff argues that just because a person is disabled does not mean that the person cannot do simple household chores. Similarly, Plaintiff criticizes the ALJ for citing the record indicating that Plaintiff unloaded groceries and shoveled the driveway. *Id.* Plaintiff argues that the ALJ failed to note her further statement in those records that "Last cold spell, I went out to shovel driveway and I just could not breathe, barely made it to house. Other time I was loading groceries in car and it was cold out." *Id.* 750. First, the Court notes that Plaintiff made the statements about unloading groceries and shoveling the driveway in the context of presenting for asthma treatment. *Id.* 752. More importantly, the ALJ considered all of these facts in the context of Plaintiff's allegation that she occasionally needed a cane for ambulation. *Id.* 19. The ALJ noted that, although the record indicated that Plaintiff used a cane to ambulate shortly after her hip replacements, *id.* (citing AR 883–907), the "record shows numerous instances of [Plaintiff] engaging in activities that would suggest greater functioning than the claimant has alleged" and then listed those activities, *id.* Plaintiff does not dispute that these activities are inconsistent with her alleged use of a cane, and she does identify other evidence in support of her alleged use of a cane.

In addition to the above facts, the ALJ also listed the activity of "walking across campus" in evaluating her alleged need for a cane. *Id.* 19. Plaintiff notes the full record statement: "Does not feel the Flexeril is helping all that much. Still spasming. Walking across campus, and will get spasms and pain afterward." *Id.* 387. Thus, Plaintiff argues that the ALJ's reliance fails to take into account how many times she may have had to stop and rest or how far "across campus" was. However, once again, Plaintiff fails to acknowledge that the ALJ noted this activity specifically

18

in relation to the alleged need for a cane. Moreover, the treatment note was from March 2013, prior to her hip replacement surgery. Plaintiff has not shown that the ALJ erred in his overall consideration of her subjective statements.

2.    *Opinion Evidence*

Plaintiff also argues that the ALJ erred in formulating the RFC by giving great weight to the opinion of the state agency medical consultants over the opinion of her treating nurse practitioner Ms. Strasburger. Plaintiff's arguments contain several misstatements of the record and fail to show that the ALJ erred in evaluating the opinion evidence.

The regulations provide that medical opinions are statements from "acceptable medical sources" that reflect judgments about the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(a)(1). Opinions from "other medical sources," such as nurse practitioners, do not qualify as "medical opinions"; nevertheless, the opinions of such sources may provide insight into the severity of an impairment and how it affects the claimant's ability to function. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).[2] Thus, an ALJ generally considers an opinion from an "other medical source" using the factors set forth in 20 C.F.R. § 1527(c) and explains the weight given to the opinion or otherwise ensures that the discussion of the evidence allows a subsequent reviewer to follow the ALJ's reasoning. 20 C.F.R. § 1527(f); SSR 06-03p, 2006 WL 2329939, at *4–6. The factors are (1) the examining relationship; (2) the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a

---

[2] Although SSR 06-03p was rescinded effective March 27, 2017, it was in effect and was binding on the ALJ at the time he issued his decision on August 2, 2016. *See* SSR 96-2p, 2017 WL 3928298 (Mar. 27, 2017).

whole; (5) the physician's specialization; and (6) other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Plaintiff's first argues that the ALJ "completely disregarded the residual functional capacity report from her regular treating practitioner." Pl.'s Br. 20. Plaintiff is incorrect. The ALJ considered and properly weighed the opinion of Plaintiff treating nurse practitioner, Ms. Strasburger. AR 23. The ALJ accurately summarized Ms. Strasburger's February 2014 opinion that Plaintiff could occasionally lift up to ten pounds and carry up to five pounds, walk only one city block before needing to rest, sit for one hour in an eight-hour workday, stand/walk less than one hour total in an eight-hour workday, and would be absent five days or more per month. *Id*. (citing AR 584–88). The ALJ then explained that, although Ms. Strasburger is not an acceptable medical source, he nevertheless considered her opinion under SSR 06-3p and gave it very "very little weight." *Id*. The ALJ found Ms. Strasburger's opinion inconsistent with her own examinations and other evidence of record. *Id*. As examples, the ALJ noted that, just three months after the opinion, Dr. Daluga noted that Plaintiff was "doing well with her hips" and that, five months after the opinion, Dr. Daluga recommended that Plaintiff be released to "[f]ull activity with no limitations." *Id*. (citing AR 644). The ALJ also recognized that two months prior to the opinion, Dr. Daluga released Plaintiff to full weight bearing as it related to her hip replacements. *Id.* (citing AR 655). The ALJ conducted a proper evaluation of Ms. Strasburger's opinion, which Plaintiff fails to acknowledge much less refute.

Second, Plaintiff cites law requiring an ALJ to give "controlling weight" to a treating source. Pl.'s Br. 16. However, under the applicable regulations, controlling weight is only given

to a medical opinion from an "acceptable medical source," *see* 20 C.F.R. § 404.1527(a)(1), (c), and, as noted above, Ms. Strasburger was not an acceptable medical source.

Third, Plaintiff misstates the record when she asserts that "the ALJ dismisses [Ms. Strasburger's] report saying that he 'affords it very little weight', but then states that *the assessment is supported by the objective medical evidence*." Pl.'s Br. 20 (emphasis added). The ALJ did *not* state that Ms. Strasburger's opinion was supported by the medical evidence. To the contrary, the ALJ found that Ms. Strasburger's opinion "is inconsistent with her own examinations and the other medical evidence of record." AR 23.

Relatedly, Plaintiff contends that the opinions of the state agency physicians Dr. Fife and Dr. Corcoran that Plaintiff does not meet Listing 1.03 for reconstructive surgery of a weight bearing joint ignored her other impairments of inflammatory arthritis in her hips, her back and lumbar abnormalities, and the fracture of her femur. Pl.'s Br. 19. However, Listing 1.03 pertains to a "major weight-bearing joint." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.03. And, "[m]ajor joints refer to major peripheral joints, which are the hips, knee, shoulder, elbow, wrist-hand, and ankle-foot, as opposed to other peripheral joints (e.g., the joints of the hand or forefoot) or axial joints (i.e., the joints of the spine) . . . ." *Id.* § 1.00E. Thus, Drs. Fife and Corcoran properly only considered her hips as a major weight bearing joint. Also, they were aware of and considered Plaintiff's inflammatory arthritis when they evaluated her claim. AR 57–61, 65–66. Finally, as noted in Part A above, Plaintiff has not identified medical evidence to satisfy the requirements of Listing 1.03 or the other listings considered by the ALJ.

Plaintiff also contests the findings of Drs. Fife and Corcoran that she can stand and/or walk for a total of four hours in a day, sit for six hours in a day, and occasionally stoop, balance,

and climb ramps or stairs, arguing that she cannot perform these physical acts "given that she requires a cane to assist in walking and the walking/standing limitations she described." Pl.'s Br. 19–20. But, as discussed above, the ALJ's properly considered the evidence regarding Plaintiff's alleged need for a cane and walking/standing limitations, and Plaintiff has identified no evidence of record to support greater limitations.

Plaintiff also represents that Drs. Fife and Corcoran "had listing § 1.03 as a severe impairment for Aldrich," Pl.'s Br. 20 (citing AR 59, 69); she argues that it was inconsistent for the ALJ to give the opinions "great weight" but then find that Plaintiff does not meet a listing. Plaintiff again misstates the record. Both doctors found that Plaintiff had the "severe" impairment of "reconstructive surgery of weight bearing joint," *see* AR 59, 68, and both doctors *considered* whether Plaintiff met Listing 1.03, *see id.* 59, 69. However, both found that Plaintiff *did not* meet Listing 1.03. *Id.* 59, 69. These findings are consistent with the ALJ's step two finding that Plaintiff has the severe impairment of status post replacement of bilateral hips, *id.* 16, and the step three finding that Plaintiff does not meet Listing 1.03, *id.* 17.

Finally, Plaintiff appears to contend that it was inconsistent for the ALJ to find that she could not perform her past work as a special education teacher, a light-level job under the DOT and as performed, but that she could perform other work "at the same light exertional level of that of a special education teacher." Pl.'s Br. 21. However, Plaintiff again fails to recognize that the ALJ assessed an RFC for a *limited range* of light work, which precluded her from performing her past work. AR 17–18; *see also* 20 C.F.R. § 404.1567(a) (defining light work). The ALJ properly found that the vocational expert testimony supported a finding that she could not

perform her past work with this limited RFC but that she could perform other work that existed in significant numbers in the national economy. AR 24.

## CONCLUSION

For the reasons stated above, the Court DENIES the relief sought in Plaintiff's Brief [ECF No. 19].

SO ORDERED on March 23, 2020.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT